**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------x | | **FOR PUBLICATION** |
| In re | : | Chapter 13 |
| | : | |
| Eric Gordon Jensen, | : | Case No. 09-14830 (MG) |
| | : | |
| Debtor. | : | |
| ------------------------------------------------------------x | | |

**OPINION AND ORDER GRANTING MOTION TO CONVERT CASE FROM A CASE**
**UNDER CHAPTER 13 TO A CASE UNDER CHAPTER 7**

*A P P E A R A N C E S:*

JEFFREY L. SAPIR
*Standing Chapter 13 Trustee*
399 Knollwood Road
White Plains, NY 10603
By:    Jody L. Kava, Esq.

MAYNE MILLER
*Attorney for Debtor Eric Gordon Jensen*
85 Worth Street, 5th Floor
P.O. Box 8050 GPO
New York, NY 10116
By:    Mayne Miller, Esq.


**MARTIN GLENN**
**United States Bankruptcy Judge**

   Eric Gordon Jensen ("Debtor") filed this chapter 13 case on August 3, 2009.  On

February 12, 2010, the Chapter 13 Trustee ("Trustee") moved to dismiss the case pursuant to

Bankruptcy Code § 1307(c)(1).  (ECF # 45.)  Debtor opposed the motion to dismiss, but argued,

in the alternative, that if the Court is going to dismiss the case, it should instead convert the case

to a case under chapter 7.  (Objection to Proposed Order, dated March 1, 2010 ("Debtor's

Objection") ¶ 19, ECF # 48.)  The Court heard argument on the matter on March 4, 2010.

During the argument, the Trustee's counsel argued, in the alternative, that if the case is not

1

dismissed, it should be converted to a case under chapter 7. For the reasons explained below, the Court grants the Trustee's motion to convert the case to a case under chapter 7 because that result is in the best interests of creditors and the estate.

## BACKGROUND

Debtor had previously filed a chapter 13 bankruptcy petition in the Northern District of New York on October 12, 2007 (Case No. 07-13199-1-rel (Bankr. N.D.N.Y.)). After the chapter 13 trustee moved to dismiss the earlier case for failure to file a plan, statements and schedules, and for delay prejudicial to creditors (*see id.*, ECF # 11), the Debtor voluntarily dismissed the case on February 19, 2008 without prejudice. (*Id.*, ECF # 15.) The Trustee moved to dismiss Debtor's current case on the grounds that the Debtor has caused unreasonable delay prejudicial to creditors because (a) the Debtor failed to amend his schedules by January 21, 2010, as required by this Court's Order dated January 14, 2010 (*see* Case No. 09-14830, ECF # 37) and (b) the proposed chapter 13 plan is insufficient and infeasible. (*See* ECF # 45.)

This case has been troubled from the start. The Debtor and his counsel did not timely file (i) a credit counseling ceritificate, (ii) his schedules or (iii) the chapter 13 plan. Debtor's counsel failed to appear at the scheduled bankruptcy court hearing on November 5, 2009. The Court was required to enter an order dated November 5, 2009, setting forth a schedule of deadlines for filing an amended chapter 13 plan and all missing schedules by November 19, 2009, providing the Trustee with all missing documents, filing delinquent operating reports by November 19, 2009, filing claims objections by December 11, 2009, filing a written status report, and appearing at an adjourned confirmation hearing on January 14, 2010. (ECF # 16.) The order warned that failure to comply with the order may result in dismissal of the case, or sanctions against the Debtor or Debtor's counsel. (*Id.*) One day before the November 19, 2009 deadline for filing an

2

amended plan and missing schedules, Debtor's counsel requested and was given an extension until November 24, 2009 to file those documents.

The First Amended Plan, filed one day late on November 25, 2009, remains inadequate and infeasible, as Debtor's counsel has been repeatedly told at court hearings on January 14, 2010, February 11, 2010, and March 4, 2010. The First Amended Plan provides for plan payments of "$100 each month, from September 1, 2009, through August 1, 2012." (ECF # 20, at 1.) Additionally, the plan provides:

> "Lump-sum payment(s) in the following amount(s): Totalling $175,000 or minimum amount needed to pay balance of all allowed claims. If applicable . . . tax refunds and proceeds from liquidation or hypothetication of unliquidated assets as follows: 100%, or amount not needed to exceed the amount required to pay 100% of all allowed claims, for each of the following taxable years: 2004-2008."

*Id.*

This statement regarding lump-sum payments is nearly incomprehensible, but more significantly, the Debtor has never shown the remotest chance that he can make lump sum payments totaling $175,000, or any amount approximating that sum. The Court has repeatedly told Debtor's counsel that the schedules remain inadequate, and despite being ordered to file amended schedules, the Debtor's counsel has failed to do so. *See* Order dated January 14, 2010, ¶ 3 (ECF # 37) ("File all missing or amended schedules on or before January 21, 2010."). Debtor's counsel did file numerous claims objections, all but one overruled, with the Court admonishing Debtor's counsel about filing frivolous claims objections. *See* Opinion and Order Overruling Debtor's Objection to Proof of Claim # 4, dated February 3, 2010, at 3 n.1.[1] (ECF # 40.)

---

[1] "The original and amended Schedules E and F, filed by Debtor's counsel, list *every* unsecured priority claim (2 tax claims totaling $19,603) and unsecured nonpriority claim (19 claims totaling in excess of $156,000) as

In Debtor's Amended Schedules, filed on November 24, 2009 (ECF # 19), Debtor estimates that he has assets in the amount of $459,119 and liabilities in the amount of $175,978. (*See* ECF # 19.)  Of the $459,119 in assets, approximately $455,712 consists of Debtor's speculative income projections.  Specifically, Debtor estimates that he has interests in:  (1) the right of compensation from the improper foreclosure of the Debtor's Warren County, New York home ("Warren County Property") in the amount of $100,000; (2) a family partnership, Jensen Family LP, in the amount of $354,712; and (3) a possible tax refund from the years 2004 to 2008 in the amount of $1,000.   *See* Schedule B (ECF # 19); s*ee also* Debtor's Objection ¶¶ 15-16. Debtor also suggests that the economy may improve to the point where Debtor's advertising business could pick up and its future income could satisfy all allowed claims.  *See* Debtor's Objection ¶ 17.  If those speculative income projections are not counted, Debtor is left with $3,407 in assets.  If Debtor is not successful in liquidating those assets, Debtor will not be able to satisfy 100% of the claims against its estate.

Debtor asserts that he has a "contingent asset" in the form of a claim against certain unknown defendants who conducted an improper foreclosure sale of Debtor's Warren County property.[2]  *See* Debtor's Objection ¶ 9.  In his amended Schedule B Debtor approximates the potential recovery at $100,000, but in the Debtor's Objection, Debtor suggests that the potential recovery would be the difference between the price paid at the foreclosure sale, $131,887, and the purchase price offered to Debtor in the $175,000 sale contract he had at the time, or $43,113.

---

disputed.  It appears to the Court that Schedules E and F, listing all claims as disputed, have not been filed in good faith.  Additionally, the claims objections filed by Debtor's counsel appear to border on being frivolous.  *Debtor's counsel is warned that if he persists in what appears to be bad faith conduct, the Court will hold a hearing to determine whether sanctions should be imposed against counsel.*"  *Id.* (emphasis in original).

[2]     The Debtor acknowledges that he commenced his prior bankruptcy case for the purpose of staying the foreclosure of the Warren County Property.  *See* Debtor's Objection ¶ 3. The Warren County Property was nonetheless sold at a foreclosure sale.  *Id.*

4

*Id.* ¶ 15. Debtor has not commenced an adversary proceeding on this matter for various reasons set forth in Debtor's Objection, including the "unavoidable delay until the Debtor was able to make a special trip to the Warren County Courthouse to copy the entire file . . . ." *Id.* ¶ 9.

Debtor proposes, in the alternative, that if recovery on the foreclosure claim falls short, Debtor could fund the plan with his interest in the family limited partnership, Jensen Family LP, the subject of which is real property located in Massachusetts. Debtor avers that his interest in the partnership will not be capable of liquidation until Debtor's mother, who is in good health and refuses to sell the Massachusetts property, dies, or until an investor lends Debtor cash in exchange for an interest in the partnership. *Id.* ¶ 16 ("At the present time, that interest is effectively not capable of liquidation, since it is completely dependent upon the general partner (the Debtor's mother), who is in good health and refuses to sell the real property in Massachusetts which is the subject of the limited partnership. However, upon her death the property could be (and may well have to be) sold in order to partition . . . .") Debtor has not made any apparent efforts to obtain an investor.

With respect to the possible $1,000 tax refund, not only is it insufficient to satisfy 100% of the claims, but it is also contingent on the Debtor consulting with an accountant and having "sufficient time to earn enough to pay the accountant's fee for amending his income-tax returns for the years 2007 and before." *See* Debtor's Status Report No. 1, ¶ 5 (ECF # 29). Furthermore, this $1,000 tax refund was anticipated by Debtor before the IRS filed its Proof of Claim in the amount of $17,655.97. *See* Proof of Claim No. 8. According to Debtor's Objection, Debtor has persuaded the accountant who had filed its previous tax returns to file amended returns for the years 2006 and 2007. *See* Debtor's Objection ¶ 7. It is unclear what, if any, effect the amendment of its tax returns will have on Debtor's ability to satisfy allowed claims.

5

**DISCUSSION**

Under Bankruptcy Code § 1307(c), a court may dismiss or convert a chapter 13 case to case under chapter 7 in 11 circumstances. 11 U.S.C. § 1307(c)(1)-(11). This list is "not exhaustive," but exemplary. 9 COLLIER ON BANKRUPTCY ¶ 1307.04 & n.33 (15th ed. rev. 2007) (noting the use of the term "including"). Two of the 11 circumstances apply here. Subsection (c)(1) provides that a court may dismiss or convert a chapter 13 case to a case under chapter 7 where there has been "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1307(c)(1). Subsection (c)(5) provides that a court may dismiss or convert a chapter 13 case in the event of "denial of confirmation of a plan under [11 U.S.C. § 1325] and denial of a request made for additional time for filing another plan or a modification of a plan." 11 U.S.C. § 1307(c)(5). The Court may convert the case rather than dismiss it if conversion "is in the best interests of creditors and the estate." 11 U.S.C. § 1307(c). For the following reasons, there is cause to convert Debtor's case under subsections (c)(1) and (c)(5), and conversion rather than dismissal is in the best interests of creditors and the estate.

    **A. There Is Cause to Dismiss or Convert Under Bankruptcy Code § 1307(c)(1) Because Debtor's Delays Are Prejudicial to Creditors**

Courts have dismissed cases under subsection (c)(1) where, for example, "the debtor, even having been granted extensions of time by the court, had failed to comply with a court order that he file tax returns necessary to compute taxing authorities' proofs of claim, without which a plan could not be confirmed," or where a debtor "who had converted from chapter 11 did not deny that plan was fraught with problems and he had made no efforts to market property that was to be sold under plan." 9 COLLIER ON BANKRUPTCY ¶ 1307.04 (citing *Howard v. Lexington Investments, Inc.*, 284 F.3d 320 (1st Cir. 2002) and *In re* Blaise, 219 B.R. 946 (B.A.P. 2d Cir. 1998)).

Here, Debtor's delay is unreasonable. As noted above, part of the delay in this case has been caused by Debtor's often groundless claims objections. 9 COLLIER ON BANKRUPTCY ¶ 3007.01 (claim objection "should . . . at a minimum, allege those facts necessary to support the objection" including "allegations sufficient to overcome the prima facie validity of the filed proof of claim"). The Debtor has done nothing to address the infeasibility of the plan or move ahead with the potential lawsuit regarding the foreclosure or the sale of his interest in the limited partnership. Nor has Debtor amended his Schedules as directed by a Court Order, having already been granted an extension of time. (*See* ECF # 16.) In light of these delays, the Court concludes that Debtor cannot confirm a plan in a timely fashion.

### B. There Is Cause to Dismiss or Convert Under Bankruptcy Code § 1307(c)(5) Because Debtor's Plan Is Infeasible

The Court also finds that Debtor's plan is not feasible. Subsection (c)(5), allowing a court to dismiss a case where the plan is not confirmable, references Bankruptcy Code § 1325(a)(6), "[b]y far the most important criterion for the confirmation of a chapter 13 plan." 9 COLLIER ON BANKRUPTCY ¶ 1325.07. Section 1325(a)(6) requires that the court determine whether "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). Debtors have the burden to prove that their plans are feasible. *See Tillman v. Lombard*, 156 B.R. 156, 158 (Bankr. E.D. Va. 1993). Confirmation of a plan where the debtor proposes a lump sum payment at a future date "is suspect" and will be denied "[u]nless the debtor shows proof that he will be able to pay the balloon payment at the time it comes due." *In re Wagner*, 259 B.R. 694, 700 (B.A.P. 8th Cir. 2001) (citation omitted). "A definite declaration as to the source and the amount of funds necessary to enable the debtor to make the plan payments is required." *Id.; see also In re Schenk*, 67 B.R. 137 (Bankr. D. Mont. 1986) (plan not feasible where debtor failed to explain how he would obtain the funds necessary

to pay the later lump sum due on his proposed plan). Here, Debtor's plan is not feasible because it is based in large part on a speculative lawsuit and the unlikely sale of an asset following the death of his healthy mother.

### 1. Debtor's Plan Is Infeasible Because It Is Premised in Part on a Speculative Lawsuit

A chapter 13 plan cannot be premised on the successful litigation of a claim. *Ewald v. Nat'l City Mortgage Co. (In re Ewald)*, 298 B.R. 76 (Bankr. E.D. Va. 2002) (§ 1325(a)(6) not satisfied where plan depends on favorable outcome in three-year-old lawsuit and debtor presented no evidence of a reasonable likelihood of success in that litigation); *In re Reines,* 30 B.R. 555 (Bankr. D.N.J. 1983) (plan predicated in part upon "highly speculative return from a lawsuit" which the trustee declined to pursue not feasible).

Bankruptcy courts in the Southern District of New York and elsewhere have converted chapter 11 cases to cases under chapter 7 where the debtor proposed to fund a plan out of the proceeds of potential litigation. *See In re FRGR Managing Member LLC*, 419 B.R. 576, 581-84 (Bankr. S.D.N.Y. 2009) (collecting decisions converting chapter 11 cases to cases under chapter 7 where the debtor's primary asset was potential lawsuit). The courts' reasoning in those chapter 11 cases applies with equal force here. After all, "[t]he principle behind Chapter 11 and Chapter 13 is the same—allow the debtor to reorganize and repay the majority of his debts without having to liquidate his assets." *Thompson v. General Motors Acceptance Corp., LLC*, 566 F.3d 699 (7th Cir. 2009). In those cases, the courts "assail the ability of a chapter 11 debtor to reorganize when the sole or main asset is a litigation claim, dismissing or converting bankruptcy cases without fully probing the merits of the underlying litigation claims." *In re FRGR Managing Member LLC*, 419 B.R. at 582. Furthermore, courts remark on the great need for "[a]n independent trustee, whose sole duty is to the estate and its creditors . . . to decide whether

8

the litigation should be pursued and whether the Debtor has claims [against creditors] from whom recoveries for the benefit of the estate and the creditors can be obtained." *Id.* at 584-85 (citing *In re Ameribuild Constr. Mgmt., Inc.*, 399 B.R. 129, 134 (Bankr. S.D.N.Y. 2009)). Here, Debtor's ability to fund its future lump sum payment depends in large part on its success in the litigation of the alleged improper foreclosure of its Warren County Property. Debtor's own evaluation of the lawsuit makes it appear that success is highly speculative, as Debtor's valuation of the estimated recovery is inconsistent. A chapter 7 trustee would be in a better position to carefully evaluate the claim and determine whether to pursue it.

> **2. Debtor's Plan Is Infeasible Because It Is Premised in Part on the Unlikely Sale of an Asset**

As to Debtor's interest in its family limited partnership, a chapter 13 plan cannot be premised on the unlikely sale of an asset. *First Nat'l Bank v. Fantasia* (*In re Fantasia*), 211 B.R. 420 (B.A.P. 1st Cir. 1997) (plan calling for payment using rental income from property that was facing foreclosure not feasible); *In re Hogue*, 78 B.R. 867 (Bankr. S.D. Ohio 1987) (plan based on debtors' "bare assertions" that they will sell their residences at or near the end of the chapter 13 plan not feasible); *In re Tucker,* 34 B.R. 257 (Bankr. W.D. Okla. 1983) (debtors must do more than speculate that assets will be sold sometime in the future; they must show a likelihood of consummating the sale); *In re Gavia*, 24 B.R. 573 (B.A.P. 9th Cir. 1982) (plan funded by the possible liquidation of debtors' homes within a specific time in a depressed market not feasible where debtors had not made any efforts to market home). Here, it is difficult to envision confirmation of a plan where its success depends, in large part, on the death of a healthy individual just three years from the plan's inception. Accordingly, the unlikely sale of Debtor's interest in the limited partnership, taken together with the speculative nature of the lawsuit, renders Debtor's plan infeasible.

**C. Conversion Is in the Best Interests of Creditors and the Estate**

Having determined that cause is present to convert or dismiss, the Court turns to whether conversion or dismissal is in the best interests of creditors and the estate. The Court finds conversion to be the preferable remedy in light of the fact that Debtor has potentially valuable assets to administer in the estate. *See* KIETH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3d ED. § 312.1 (2000 & Supp. 2004) ("If there are assets to be administered, conversion will usually be the better bet for the general creditor."). Furthermore, the appointment of an independent and disinterested trustee upon conversion would ensure the prompt liquidation of assets, including the pursuit of litigation and the sale of debtor's interest in its family partnership. Debtor has demonstrated by his delays that judicial and administrative oversight is essential to move forward on these pursuits. *See, e.g.*, *In re Chapter 13*, 219 B.R. 946 (B.A.P. 2d Cir. 1998) (finding conversion rather than dismissal appropriate where, *inter alia*, the debtor "persisted in delaying the sale of property, the proceeds of which were to be used to pay creditors").

/ / / /

/ / / /

/ / / /

/ / / /

## CONCLUSION

For the foregoing reasons, the Trustee's motion to convert the case from a case under chapter 13 to a case under chapter 7 is **GRANTED.**

**IT IS SO ORDERED.**

DATED:   March 17, 2010
         New York, New York

                         _____/s/Martin Glenn_____
                         MARTIN GLENN
                         United States Bankruptcy Judge